UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JIMMIE DEVAUGHN BURKES, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:24-CV-234-TLS |
| NATHANIEL SWEENY, et al., | |
| Defendants. | |

**OPINION AND ORDER**

Jimmie DeVaughn Burkes, a prisoner without a lawyer, is proceeding in this case against Officers Nathaniel Sweeney, Lance Sands, and Joshua Carder for using excessive force against him during a traffic stop by pointing a gun at him without cause on or about July 2, 2022, in violation of the Fourth Amendment. ECF 10 at 3. Officer Sweeney and Officer Sands filed a joint motion for summary judgment. ECF 41. Officer Carder filed a separate motion for summary judgment. ECF 50. Burkes filed a joint response to both summary judgment motions, and the defendants filed replies. ECF 62, 66, 71. Burkes then filed an unauthorized sur-response,[1] along with a motion for a settlement agreement. ECF 74, 75. The defendants' summary judgment motions are now fully briefed and ripe for ruling.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

---

[1] Northern District of Indiana Local Rule 56-1(b) provides an opportunity for only a single response. Nevertheless, the court has reviewed and will address the contents of Burkes' sur-response.

U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citation omitted). The court will "not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770 (citation omitted).

Excessive-force claims that occur during the course of an arrest or apprehension of a suspect "are governed by the Fourth Amendment's 'reasonableness' standard, which turns on the totality of the circumstances confronting [the officers] viewed from the perspective 'of a reasonable officer on the scene." *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 396 (1989)). "Whether a particular use of force was objectively reasonable 'is a legal determination rather than a pure question of fact for the jury to decide.'" *Id*. (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012)). In analyzing these claims, the court must "consider the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat

to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight." *Bayon v. Berkebile*, 29 F.4th 850, 854 (7th Cir. 2022) (cleaned up).

"[T]he excessive force inquiry 'looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended.'" *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000) (quoting *McDonald v. Haskins*, 966 F.2d 292, 294 (7th Cir. 1992)). Accordingly, the Seventh Circuit has held that pointing a gun at an individual who presents no danger is unreasonable and violates the Fourth Amendment. *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009) (citing case). Alternatively, "while police are not entitled to point their guns at citizens when there is no hint of danger, they are allowed to do so when there *is* reason to fear danger." *Id.* at 346; *see Williams v. City of Champaign*, 524 F.3d 826, 827–29 (7th Cir. 2008) (finding no excessive force when officers pointed their guns at someone who they reasonably believed might have committed a double robbery moments before). Accordingly, "courts do not find constitutional violations for gun pointing when there is a reasonable threat of danger or violence to police." *Baird*, 576 F.3d at 346–47 (collecting cases); *see also Paige v. City of Fort Wayne*, No. 1:09-CV-143, 2010 WL 3522526, at *6 (N.D. Ind. Sept. 2, 2010) (noting that, once the officers had reasonable suspicion that the plaintiff had threatened someone with a pistol, they were justified in drawing their weapons for their own protection as they effectuated the stop); *United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004) ("It is well established . . . that when officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons . . . in order to control the scene and protect their safety." (citations omitted)).

*Officer Sweeney and Officer Sands*

Officer Sweeney and Officer Sands file affidavits, in which they attest to the following facts: On July 2, 2022, Officer Sands was working as a full-time officer and Officer Sweeney was working as a reserve officer for the Fairmount Police Department. ECF 43-2 at 1; ECF 43-3 at 1. Around 10:00 p.m., Officer Sweeney saw a car that was travelling well above the speed limit cross the solid white line on the right edge of the roadway. ECF 43-2 at 1. Officer Sweeney activated his emergency lights, stopped and approached the vehicle, and asked the driver for his license and registration. *Id.* at 1–2. The driver handed him an Indiana Learner's Permit bearing the name "Jimmie Devaughn Burkes." *Id.* at 2. Officer Sweeney learned that Burkes was on parole out of Elkhart County for drug offenses and that the passenger in his car, Baylee Cox, did not have any valid identification on her and her driver's license was suspended. *Id.* Due to his training and expertise and because it appeared Burkes was driving with a learner's permit and did not have a licensed driver in the vehicle with him, Officer Sweeney called for backup. *Id.* When Officer Sands arrived as backup, Officer Sweeney briefed him on this information and Officer Sands went to talk to Burkes in his vehicle. *Id.*; ECF 43-3 at 1–2.

Officer Sands asked Burkes if there were any guns or drugs in the vehicle, and Burkes denied having any such things in the car. ECF 43-3 at 2. Officer Sands observed both Burkes and Cox were visibly nervous and Burkes had rapid breathing and was shaky. *Id.* Officer Sands believed the situation seemed suspicious based on his training and experience, so he consulted with Officer Sweeney and decided to tow Burkes' car. *Id.* Officer Sands went up to the passenger side of the vehicle and asked the occupants to step out of the car. *Id.* Burkes asked what he needed to do, such as get someone else to drive his car, and Officer Sands responded he would explain once they exited the car. *Id.* Burkes hesitated and asked if he could roll up the windows,

4

and Officer Sands responded they would take care of that. *Id.* At this point, neither Officer Sands nor Officer Sweeney had drawn their weapons. ECF 43-2 at 2. A third officer, Officer Carder from the Jonesboro Police Department, arrived on the scene. *Id.*

While the passenger was exiting the vehicle, Officer Sands witnessed Burkes remove a gun from his pants and slip it into the pocket on the side of the car door. ECF 43-3 at 2. Burkes exited the vehicle through the driver's side door, but then began reaching back into the vehicle, at which point Officer Sands began yelling repeatedly for him to step back. *Id.* Officer Sands was concerned that Burkes, who previously denied having any firearm, had pulled out a gun and stashed it in the door, and he knew Burkes could grab the gun in the car door when he reached back into the vehicle. *Id.* at 3. Officer Sands quickly unholstered his gun, pointed it at Burkes, moved the passenger out of the way, told Burkes to step away from the vehicle, and told Officer Sweeney to put Burkes in handcuffs. *Id.* at 2. Officer Sweeney grabbed Burkes and pulled him away from the vehicle, while Burkes physically resisted and refused to drop something he was holding in his hand. ECF 43-2 at 2–3. Officer Sweeney moved Burkes to the rear of the vehicle and had him place his hands on the trunk. ECF 43-2 at 3; ECF 43-3 at 2. Once Officer Sweeney had Burkes secured and was in the process of handcuffing him, Officer Sands holstered his firearm. ECF 43-3 at 3. Officer Sands had his firearm drawn and pointed at Burkes for approximately fifteen seconds. *Id.*

Once Officer Sweeney had Burkes secured in handcuffs, Officer Sands asked Officer Carder to secure the weapon in Burkes' vehicle. ECF 43-2 at 3. Officer Carder retrieved the gun from the car door, removed the magazine, and cleared a bullet that was in the chamber. ECF No. 43-3 at 3. The officers searched the vehicle and found what appeared to be drugs and a large sum of money. ECF 43-2 at 3; ECF 43-3 at 3. Officer Sands arrested Burkes while Officer Sweeney

waited with the vehicle until it was towed from the roadway. ECF No. 43-2 at 3. Officer Sweeney never drew his firearm during Burkes' arrest, while Officer Sands briefly had his weapon drawn and holstered it once Officer Sweeney was in control of Burkes. *Id.* The defendants provide a video of Officer Sands' bodycam footage during Burkes' arrest, which is consistent with and does not conflict with any of their attestations. ECF 46.[2] Based on this arrest, Burkes was charged and convicted in state court of drug offenses and unlawful possession of a firearm. *See Burkes v. State*, 231 N.E.3d 229 (Table), 2024 WL 797187 (Ind. Ct. App. 2024). Because Burkes does not dispute any of these facts, the court accepts them as undisputed.

     Here, based on the undisputed evidence in the record, no reasonable jury could conclude the defendants used excessive force against Burkes in violation of his Fourth Amendment rights. Specifically, it is undisputed that: (1) the officers knew Burkes was on parole for drug offenses at the time of the traffic stop; (2) Burkes falsely stated to Officer Sands during the traffic stop that he did not have a gun in the car; (3) after Burkes was told to exit the car, Officer Sands witnessed Burkes remove a gun from his pants and slip it into the pocket of the car door; (4) Burkes then began reaching back into his car, at which point Officer Sands unholstered his firearm and pointed it at Burkes while telling him to back away from the vehicle; (5) Officer Sweeney grabbed Burkes, and Burkes began physically resisting and refused to drop what he was holding; (6) Officer Sweeney led Burkes to the back of the vehicle and placed him in handcuffs; (7) once Officer Sweeney had control of Burkes, Officer Sands reholstered his firearm; and (8) Officer Sands' firearm was only unholstered and pointed at Burkes for approximately fifteen seconds.

---

[2] "When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (citing *Scott v. Harris*, 550 U.S. 372, 379–80 (2007)); *see also United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022) ("And a video record of the events at issue can evaporate any factual dispute that would otherwise exist, as courts view the 'facts in the light depicted by the videotape.'") (quoting *Scott*, 550 U.S. 372).

6

Because it is undisputed Burkes falsely stated to Officer Sands that he did not have a gun in the car before Officer Sands witnessed Burkes slip a gun into the car door and begin reaching back into the car, there was a reasonable threat of danger to the officers, and it was reasonable for Officer Sands to unholster his firearm and point it at Burkes for approximately fifteen seconds until Burkes was under Officer Sweeney's control. *See Baird*, 576 F.3d at 346–47 ("[C]ourts do not find constitutional violations for gun pointing when there is a reasonable threat of danger or violence to police."); *Clark v. Clark*, 926 F.3d 972, 979–80 (8th Cir. 2019) (determining that an officer pointing a gun at a suspect "for a few seconds while removing him from his vehicle did not constitute excessive force, and did not violate the Fourth Amendment" because the officer knew the suspect had a weapon in his car and had reason to believe he might be attempting to evade capture); *Howard v. Ealing*, 876 F. Supp. 2d 1056, 1066–67 (N.D. Ind. 2012) (finding police officers did not use excessive force when they pointed their guns at the suspect, a licensed street peddler, while the suspect was sitting in the driver's seat of his van, as officers were acting on a tip that the van was potentially involved in narcotics trafficking and they had reason to fear for their safety once they discovered a gun in the van). Based on the record before the court, no reasonable jury could conclude the defendants used excessive force against Burkes because Officer Sands unholstered his firearm and pointed it at Burkes for approximately fifteen seconds during his arrest.

     In his summary judgment response, Burkes raises various arguments that have no impact on the analysis of this case. Specifically, Burkes argues repeatedly that he never received any traffic citation as a result of his interaction with the defendants. ECF 62 at 1–3. But because Burkes does not dispute that he (1) committed a traffic violation by driving without a valid

license and (2) had a gun and drugs in his vehicle,³ whether or not he was issued a traffic citation is not relevant to whether the defendants used excessive force against him in effectuating his arrest. Burkes also argues Officer Sands forged a document used at his trial and committed perjury because his trial testimony differed from his testimony at the pre-trial suppression hearing. ECF 62 at 2. But Burkes does not explain how this argument shows Officer Sands used excessive force against him during his arrest, and Burkes' mere challenge to Officer Sands' credibility is insufficient to show a genuine dispute. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[W]hen challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper." (citation omitted)).

Accordingly, the undisputed facts show the defendants used only a reasonable amount of force against Burkes when Officer Sands unholstered his firearm and pointed it at Burkes for approximately fifteen seconds until Burkes was under the control of Officer Sweeney and the reasonable threat of danger had passed. Summary judgment is therefore warranted in favor of Officer Sweeney and Officer Sands on this claim.⁴

*Officer Carder*

Officer Carder attests to the following facts: On July 2, 2022, Officer Carder, an officer with the Jonesboro Police Department, responded to a traffic stop conducted by Officer Sweeney and Officer Sands of the Fairmount Police Department. ECF 51-1 at 1. Officer Carder arrived while the traffic stop already was in progress, exited his vehicle, approached the traffic stop, and

---

³ Even if Burkes did attempt to dispute that he possessed a gun and drugs, he is prevented from disputing these facts under *Heck v. Humphrey*, 512 U.S. 477 (1994), as such an allegation would necessarily imply the invalidity of his convictions for drug offenses and unlawful possession of a firearm. *See Burkes v. State*, 231 N.E.3d 229 (Table), 2024 WL 797187 (Ind. Ct. App. 2024).
⁴ Because the court concludes Officer Sands and Officer Sweeney did not use excessive force against Burkes, it does not reach their alternative argument that they are entitled to qualified immunity.

could hear the Fairmount officers directing Burkes to step away from his vehicle. *Id.* at 2. Officer Carder witnessed that Officer Sands had his weapon drawn and pointed at Burkes while Officer Sweeney was placing Burkes in handcuffs. *Id.* Officer Carder approached Officer Sweeney to provide additional manpower, but there was no need for Officer Carder to assist in placing Burkes in handcuffs. *Id.* Officer Carder did not unholster his firearm at any time, and his only involvement in Burkes' arrest was to stand nearby while Burkes was handcuffed and then retrieve the loaded handgun from Burkes' vehicle. *Id.* at 3. Officer Carder did not engage in any activity that constituted the use of force or a seizure of Burkes' person. *Id.*

In his summary judgment response, Burkes does not mention Officer Carder by name and refers only to the conduct of the Fairmount police officers, which does not include Officer Carder. *See* ECF 62. And in his sur-response, Burkes argues Officer Carder "freely and willingly chose to go out of the Jonesboro City limits" to aid Officer Sands and Officer Sweeney in effectuating his arrest, but Burkes does not otherwise dispute or challenge any of Officer Carder's attestations. ECF 75. Therefore, because it is undisputed that (1) Officer Carder's only involvement in Burkes' arrest was to stand nearby while Burkes was handcuffed by Officer Sweeney and then retrieve the handgun from Burkes' vehicle, and (2) Officer Carder did not engage in any activity that constituted the use of force or a seizure of Burkes' person, no reasonable jury could conclude Officer Carder used excessive force against Burkes in violation of his Fourth Amendment rights. Summary judgment is therefore warranted in favor of Officer Carder on this claim.

For these reasons, the court:

(1) GRANTS Officer Sweeney and Officer Sands' motion for summary judgment (ECF 41);

(2) GRANTS Officer Carder's motion for summary judgment (ECF 50);

(3) DENIES as moot Burkes' motion for a settlement agreement (ECF 74);

(4) DIRECTS the Clerk of Court to enter judgment in favor of Defendants Nathaniel Sweeny, Lance Sands, and Joshua Carder and against Plaintiff Jimmie DeVaughn Burkes, with Plaintiff Jimmie DeVaughn Burkes taking nothing by his complaint; and

(5) DIRECTS the Clerk of Court to close this case.

SO ORDERED on February 12, 2026.

                                                s/ Theresa L. Springmann  
                                                JUDGE THERESA L. SPRINGMANN  
                                                UNITED STATES DISTRICT COURT